CITY OF NORTH OLMSTED, Appellant,

v.

ELIZA JENNINGS, INC., Appellee.

[Cite as *N. Olmsted v. Eliza Jennings, Inc.* (1993), 91 Ohio App.3d 173.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 63847, 64276.

Decided Oct. 18, 1993.

*Michael R. Gareau,* Director of Law, and *James M. Dubelko,* Assistant Director of Law, for appellant.

*Calfee, Halter & Griswold, Mark I. Wallach* and *Marilyn G. Zack;* and *Smith R. Brittingham,* for appellee.

SPELLACY, Presiding Judge.

This is a consolidated appeal. Plaintiff-appellant, the city of North Olmsted ("appellant"), appeals the granting of summary judgment to defendant-appellee, Eliza Jennings, Inc. ("Jennings"), in a dispute over sewer tap-in fees.

Appellant raises the following assignments of error:

"I. The trial court erred in holding that the decision of the Supreme Court in *State, ex rel. Eliza Jennings v. Noble,* 49 Ohio St.3d 71 (1990), was not retroactive in its operation.

"II. The trial court erred in holding that the city of North Olmsted, by failing to seek a stay of the court of appeals' decision in a former proceeding between these. parties, waived its right to recover permit fees due and owing from Eliza Jennings.

"III.   The trial court erred in holding that the city of North Olmsted failed to state a claim upon which relief could be granted.

"IV.   The trial court erred in failing to follow the decision of the Supreme Court in *State, ex rel. Eliza Jennings Inc. v. Noble, supra,* and apply the law of that decision to the claim of the city of North Olmsted in the proceedings below.

"V.   The trial court erred in failing to grant summary judgment to the city of North Olmsted in the amount of $106,177.05 together with interest at the rate of 10% per annum from December 5, 1988."

Finding appellant's appeal to have merit, we reverse the judgment of the trial court.

## I

On March 30, 1988, Jennings, an Ohio not-for-profit corporation, applied to appellant for permits to connect its Renaissance development to appellant's sanitary sewer system.   The Renaissance is a continuing care facility for the elderly located in Olmsted Township.   Under a 1965 agreement, that portion of Olmsted Township is serviced by appellant's sewer system.   Jennings tendered a check for $62,832.00 along with its application.   Appellant rejected the application and check stating the correct fee for Jennings' sewer connections was $176,-779.44.

The dispute centered on the interpretation of Sections 911.09 and 911.10 of the Codified Ordinances of the city of North Olmsted.   Jennings maintained only Section 911.10 requiring a $924 fee per connection applied.   Appellant calculated the fee by multiplying $924 by the number of benefited units as defined in Section 911.09.   A 1983 agreement between appellant and Cuyahoga County stated that Olmsted Township property owners applying to use appellant's sewer system would be subject to all the provisions of Chapter 911.

On May 9, 1988, Jennings sought a writ of mandamus from this court asking that the North Olmsted Service Director, Richard Noble, be directed to issue the permits.   The writ was granted.   Prior to that decision appellant issued the permits for the sixty-two townhouses in the Renaissance development.   Both parties agreed that the issuance did not constitute a waiver of any rights in the litigation.   The remainder of the permits were issued after the writ of mandamus was granted.

Appellant appealed to the Supreme Court of Ohio.   The Supreme Court reversed this court, holding Jennings had an adequate remedy at law.   The court also found that both Sections 911.09 and 911.10 applied to Olmsted Township residents so that Jennings is subject to both the "per connection" charges in Section 911.10 and the "benefited unit" charges found in Section 911.09.   *State ex*

*rel. Eliza Jennings, Inc. v. Noble* (1990), 49 Ohio St.3d 71, 75, 551 N.E.2d 128, 132. The court calculated the correct fee as $555 multiplied by the number of benefited units plus $924 per connection. This was a different calculation than that used by appellant which multiplied the number of units by $924.

Appellant then filed a complaint to collect the difference between what Jennings paid and what the Supreme Court stated was the correct fee. After stipulating to the facts, both parties moved for summary judgment.

The trial court granted Jennings's motion for summary judgment. The court found appellant waived any right to additional compensation by failing to seek a stay or reserve its rights somehow after the writ of mandamus was issued. All permits already were paid for and granted. The trial court also held that *Noble, supra,* should have only prospective and not retroactive application.

Appellant appeals from this decision.

## II

In its first assignment of error, appellant contends the trial court erred by not retroactively applying the Supreme Court's decision in *State ex rel. Eliza Jennings, Inc. v. Noble* (1990), 49 Ohio St.3d 71, 551 N.E.2d 128.

In *Noble, supra,* the Supreme Court stated the main issue to be decided was whether Jennings was required to submit a fee calculated only under Section 911.10 or whether the benefited unit provisions of Section 911.09 also applied. The court found both the per connection fee under Section 911.10 and the benefited unit fee under Section 911.09 were required. The court based this finding on its interpretation of the 1983 agreement between North Olmsted and Cuyahoga County which stated that all the provisions of North Olmsted's Codified Ordinances Chapter 911 should be applied to Olmsted Township residents.

The trial court found this decision to be prospective only in application based on the Supreme Court's finding that the main issue to be decided was the proper tap-in fee for residents of Olmsted Township, the Supreme Court's failure to remand the case or issue judgment against Jennings and use of the past tense when addressing the issue of the amount of the permit fees. The trial court also stated that a retroactive application would permit North Olmsted to rebill all Olmsted Township residents who had received permits even years afterwards. The trial court found this to be an overbroad interpretation of *Noble.*

Appellant argues the construction of the ordinances in *Noble* should be applied to the instant case. *Noble* is the only judicial construction of the ordinances and is an interpretation of the ordinances, not a retroactive application of a new ordinance. The decision construed rather than changed existing law. Appellant

maintains it would not use the *Noble* construction to rebill other Olmsted Township residents and points out that the dispute over the fee owed by Jennings has been ongoing since Jennings's first application.

Jennings counters by pointing out that in *Noble* the only issue was whether the writ of mandamus was properly issued and appellant is taking that decision far from its narrow context. Further, the determination of the proper fee does not mean Jennings owes that amount as it was not ordered to pay anything. Indeed, the Supreme Court could not have ordered Jennings to pay as it was reviewing a writ.

Jennings also points out that Sections 911.09 and 911.10 require North Olmsted to collect the fee before making the sewer connection. Also, the general rule that judicial interpretation of a statute has retroactive effect is not applicable here as the Supreme Court addressed the effect of the 1983 agreement and did not construe the meaning of the ordinances.

A decision shall be applied retroactively unless a specific provision declares its application to be prospective only. *State ex rel. Bosch v. Indus. Comm.* (1982), 1 Ohio St.3d 94, 98, 1 OBR 130, 133, 438 N.E.2d 415, 418.

"The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." *Peerless Electric Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468.

In the instant case, the Supreme Court decided the proper tap-in fee to be paid by citizens of Olmsted Township when applying for permits. The decision did not interpret the ordinances themselves but rather the 1983 agreement between North Olmsted and Cuyahoga County. That agreement determined the effect of the ordinances on Olmsted Township residents. The court found that under the agreement, Sections 911.09 and 911.10 both would apply to citizens of Olmsted Township applying for tap-in permits from North Olmsted. *Noble* did not create new law but stated what the law always had been. See *Anello v. Hufziger* (1988), 48 Ohio App.3d 28, 547 N.E.2d 1220. That *Noble* interpreted an agreement pertaining to the ordinances rather than the ordinances is a distinction without a difference. It was the agreement which governed what Olmsted Township residents would pay under the ordinances. Therefore, the declaration of the proper tap-in fee was retroactive in application as it stated what always had been the fee.

Appellant's first assignment of error is well taken.

### III

In its second assignment of error, appellant contends the trial court erred in determining it waived the right to additional compensation for the permits by failing to seek a stay of the writ of mandamus. Appellant argues the only issue before the court was whether mandamus was proper. Appellant could not counterclaim for relief against Jennings in a mandamus action. Appellant maintains it continuously had sought to recover the fees owed to it by Jennings.

Jennings argues it paid the tap-in fees for permits for the sixty-two townhouses before the writ of mandamus was issued. Jennings contends this agreement and the acceptance of its check constitutes an accord and satisfaction. Jennings further argues that appellant's failure to obtain a stay and its acceptance of Jennings's check for the additional permits is a waiver to any right to additional fees.

A party may voluntarily relinquish a known right through words or by conduct. *State ex rel. Ford v. Cleveland Bd. of Edn.* (1943), 141 Ohio St. 124, 25 O.O. 241, 47 N.E.2d 223. A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts. *Kiefer Mach. Co. v. Niemes* (1948), 82 Ohio App. 310, 38 O.O. 20, 80 N.E.2d 183.

"It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform. Mere silence will not amount to waiver where one is not bound to speak." *List & Son Co. v. Chase* (1909), 80 Ohio St. 42, 49, 88 N.E. 120, 122.

A waiver is something akin to estoppel. It may be enforced by the person having a duty to perform, who has changed his position as a result of the waiver. *Andrews v. Teachers Retirement Sys.* (1980), 62 Ohio St.2d 202, 205, 16 O.O.3d 240, 241, 404 N.E.2d 747, 749. The party seeking to prove the waiver must do so by showing a clear, unequivocal, decisive act by the other party of such a purpose it amounts to an estoppel on that party's part. *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 198–199, 5 O.O. 548, 550, 551, 2 N.E.2d 501, 504–505.

The trial court relied on appellant's failure to seek a stay after the writ of mandamus was issued to find a waiver by appellant to any additional fees for the permits. A similar argument was advanced in *Noble* to argue the appeal was moot as the connections already were made. The Supreme Court stated in response that the main issue still in controversy was the proper fee to be paid by Olmsted Township residents in order to tap-in to North Olmsted's sewer system.

That issue remained in controversy until resolved by the Supreme Court in *Noble*. Appellant has disputed the amount of fees owed it by Jennings continuously since 1988. The issue was argued by both parties to the Supreme Court subsequent to the connections being made. There was no clear, unequivocal, decisive act by appellant showing it waived its rights to the balance of the fees owed it by Jennings. Appellant did not waive any right to additional compensation by issuing the permits to Jennings.

Jennings maintains the issuance of the sixty-two permits for its townhouses constitutes an accord and satisfaction foreclosing any right of appellant to additional compensation.

Accord and satisfaction is an affirmative defense to a claim for money damages. The burden of proof is upon the proponent of the defense. "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 231, 611 N.E.2d 794, 796. Four elements are needed to show an accord and satisfaction: proper subject matter, competent parties, mutual assent, and consideration. *Warner Storage, Inc. v. Systemation, Inc.* (1989), 64 Ohio App.3d 1, 4, 580 N.E.2d 490, 492. It is the result of an agreement between the parties which must be consummated by a meeting of the minds. The mere cashing of a check, without more, does not bring the transaction within the doctrine of accord and satisfaction. *Warner Elevator Mfg. Co. v. Higbee* (1935), 53 Ohio App. 546, 7 O.O. 355, 5 N.E.2d 947. "The debtor must make it clear, in the eyes of a reasonable person, that the check is being tendered only on condition that it is taken in full payment of the disputed claim. A corollary to this rule is that the intention of the creditor in negotiating the check is not relevant." *Allen, supra,* 66 Ohio St.3d at 233, 611 N.E.2d at 798.

The agreement between appellant and Jennings regarding the permits for the townhouses was premised on both parties' belief that the fee was the same regardless of the method of calculation employed by either party. Jennings stated that the agreement was neither a waiver nor a compromise of either party's position in the mandamus litigation. Appellant also agreed neither party waived any rights or compromised its positions in the mandamus litigation or any future lawsuit regarding the controversy. Because both parties reserved their rights to dispute the correct fee, there was not an accord and satisfaction. There is no showing both parties were assenting to ending the dispute over the fees upon the issuance of the permits.

Appellant's second assignment of error has merit.

## IV

In its third assignment of error, appellant contends it was error for the trial court to hold appellant failed to state a claim upon which relief may be granted. The trial court granted Jennings's motion for summary judgment after refusing to retroactively apply *Noble* and finding appellant waived any right to additional compensation for the permits. The trial court therefore held appellant failed to state a claim upon which relief may be granted.

Civ.R. 56(C) provides that summary judgment is proper if the trial court determines that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273.

Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. It should be granted with caution only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. An appellate court's basic inquiry on review is whether, in light of the record, the trial court's grant of summary judgment can be sustained. *Petrey v. Simon* (1984), 19 Ohio App.3d 285, 287, 19 OBR 456, 458, 484 N.E.2d 257, 259. Appellant must demonstrate that either a genuine issue of material fact existed between the parties or that the appellee was not entitled to judgment as a matter of law. *Stibora v. Greater Cleveland Bowling Assn.* (1989), 63 Ohio App.3d 107, 112, 577 N.E.2d 1175, 1178.

The facts were stipulated to and there is no dispute over any material facts. We already have determined *Nolan* is to be applied retroactively and that appellant did not waive its right to collect the correct tap-in fee from Jennings. Therefore, the trial court's basis for holding appellant failed to state a claim upon which relief may be granted was erroneous. Jennings was not entitled to judgment as a matter of law.

Appellant's third assignment of error has merit.

## V

In its fourth assignment of error, appellant contends the trial court should have applied the law of case doctrine and *res judicata* to its proceedings. Appellant

argues that, although this appeal is technically from a separate action, the law of the case doctrine should still apply as for all practical purposes this is a continuation of the same case. Appellant points out that the same facts and issues are involved as were involved in the previous appeal.

The doctrine of the law of the case provides that a decision of a reviewing court remains the law for that case as to all relevant legal questions in subsequent proceedings both at trial and appellate levels unless that rule of practice achieves an unjust result. *Weir v. Kebe* (1985), 29 Ohio App.3d 53, 29 OBR 62, 503 N.E.2d 177. The rule ensures consistency in the results of the case, avoids excessive litigation, and preserves the structure of superior and inferior courts as designed by the Ohio Constitution. *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 2, 462 N.E.2d 410, 412. The rule was created because of the necessity of a trial court to obey the mandate of a reviewing court upon a retrial of a case. *Gohman v. St. Bernard* (1924), 111 Ohio St. 726, 731, 146 N.E. 291, 292. It applies upon remand from a reviewing court, when a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal. *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 519 N.E.2d 390.

Although many of the same facts and issues are present in the instant case as were considered in the mandamus action, this appeal arose from a separate case, not a remand to the trial court. The decision of the prior litigation was whether or not mandamus was appropriate, not whether Jennings owed appellant additional fees. This is a separate cause of action and not a continuation of the same proceedings. The law of the case doctrine does not apply under these circumstances.

Appellant also contends *res judicata* should be applied to the instant case on the issue of the correct amount to be paid for the sewer tap-in connection. Appellant argues the same issue was decided in the prior litigation between the same parties.

The Supreme Court of Ohio in *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, defined *res judicata:*

"The doctrine of *res judicata* involves two basic concepts. *Norwood v. McDonald* (1943), 142 Ohio St. 299, [27 O.O. 240] 52 N.E.2d 67. First, it refers to the effect a judgment in a prior action has in a second action based upon the same cause of action. The Restatement of the Law, Judgments, Section 45, uses the terms 'merger' and 'bar.' If the plaintiff in the prior action is successful, the entire cause of action is 'merged' in the judgment. The merger means that a successful plaintiff cannot recover again on the same cause of action, although he may maintain an action to enforce the judgment. If the defendant is successful in the prior action, the plaintiff is 'barred' from suing, in a subsequent action, on the

same cause of action. The bar aspect of the doctrine of *res judicata* is sometimes called 'estoppel by judgment.' Restatement of the Law, Judgments, Section 45, comment (b).

"The second aspect of the doctrine of *res judicata* is 'collateral estoppel.' While the merger and bar aspects of *res judicata* have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, comment (c), and Section 68(2); *Cromwell v. County of Sac* (1876), 94 U.S. 351 [24 L.Ed. 195]. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." (Emphasis *sic*.) *Id.* at 112, 49 O.O.2d at 437, 254 N.E.2d at 12.

In the instant case, the cause of action of the underlying claim differs from that of the writ of mandamus. Therefore, the claim preclusion aspect of *res judicata* is not applicable.

In order to successfully assert collateral estoppel or issue preclusion, a party must plead and prove "(1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit." *LaBonte v. LaBonte* (1988), 61 Ohio App.3d 209, 216, 572 N.E.2d 704, 709.

In this way, collateral estoppel prevents the relitigation of a particular issue or determinative fact which was actually and necessarily decided in a previous decision involving a different cause of action. *Distelzweig v. Hawkes Hosp. of Mt. Carmel* (1986), 34 Ohio App.3d 277, 278, 518 N.E.2d 43, 44. It serves the dual purpose of protecting litigants from "the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559. Appellant was not technically a party to the mandamus action. Collateral estoppel requires mutuality of parties. It only applies where all of the parties to the present proceeding were bound by the prior judgment. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, at paragraph one of the syllabus. A determination of whether there is an identity of parties requires a court to look behind the nominal parties to the substance of the cause to determine the real parties in interest. *Trautwein v. Sorgenfrei* (1979), 58 Ohio

St.2d 493, 501, 12 O.O.3d 403, 407, 391 N.E.2d 326, 330. In Ohio, "when a judgment is rendered for or against an officer of a municipal corporation in his official capacity, in matters to which he is entitled to represent it, the judgment is binding against the corporation, or another officer representing the corporation." *State ex rel. Gill v. Winters* (1990), 68 Ohio App.3d 497, 504, 589 N.E.2d 68, 73. Richard Noble was a party to the previous action as Service Director for the appellant. The judgment would be binding against appellant to the same extent Noble is bound. Noble and appellant are in privity with each other. The mutuality requirement of collateral estoppel is met.

Both parties fully litigated the issue of the correct tap-in fee in the previous action. That issue was decided in *Noble* and was necessary to the determination of whether mandamus was the proper remedy. The Supreme Court of Ohio stated that the main issue in *Noble* was the correct calculation of the tap-in fee. The decision regarding the correct amount is binding on any subsequent action between the parties in which the fee amount is in issue. That amount is in issue in the instant case. The determination of what Jennings was to pay for the permits was decided in *Noble* and the parties are precluded from relitigating the issue.

Appellant's fourth assignment of error has merit.

## VI

In its fifth assignment of error, appellant contends it is entitled to prejudgment interest at the statutory rate from the date Jennings received all its permits. The trial court did not address the issue as it determined North Olmsted was barred from collecting additional permit fees from Jennings.

R.C. 1343.03(A) states:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

The dispute between appellant and Jennings was not based upon an instrument of writing, verbal contract, or judgment. Appellant's action arose by operation of

law, instead of one of the instances listed in R.C. 1343.03(A). Therefore, the statute does not apply. Appellant is not entitled to prejudgment interest.

Appellant's fifth assignment is without merit.

The judgment of the trial court reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY and HARPER, JJ., concur.