JOURNAL ENTRY AND OPINION
This is an appeal from an order of Cleveland Municipal Court Judge Angela R. Stokes confirming and approving a decision by Magistrate Kenneth McLaughlin enforcing a contempt citation against attorney William L. Blake. The order required Blake to pay discovery-related costs, incurred during his representation of Jimmy Croom in Croom v. Mackey, Cleveland Municipal Court Case No. 94-CVF-0014961, within 30 days or be remanded to custody. Blake contends the cost for reproduction of bank records is contrary to Ohio law, that he cannot be held responsible for them and that it was error to deny his client attorney fees for opposing the bank's spurious motion in 1995. We do not agree and affirm.
Blake's contempt ensued from his failure to pay $1,287.25 to appellee Dollar Bank for the cost to reproduce Christine Mackey's financial records. We glean the background from Croom v. Mackey
(Jan. 15, 1998), Cuyahoga App. No. 71135, unreported, appeal not allowed (1998), 82 Ohio St.3d 1430, 694 N.E.2d 980 (Croom I), and the record below.
Croom contracted with Winfred H. Mackey, d/b/a DNM, Inc., to demolish and replace the porch on Croom's house. In April and May 1993, Croom gave two checks to Mackey, one for $1,500.00 and another for $400.00, both of which he endorsed over to his ex-wife, Christine Mackey. Both checks were deposited in her account at Dollar Bank.
When Mackey failed to demolish and replace the porch, Croom brought suit in the Cleveland Municipal Court against both DNM, Inc. and Mackey, and obtained a judgment in the amount of $1,900 against both. When his attempts to satisfy this judgment proved unsuccessful, Croom filed the instant action against Christine Mackey in July 1994. In this complaint Croom alleged that Mackey deposited the $1,900 in Christine Mackey's account, that Christine Mackey used the account to conduct Mackey's business and, therefore, the money in that account is held in trust for Croom to satisfy his money judgment against Mackey.
After Croom filed this complaint and could not obtain any financial discovery from Christine Mackey, he sought to procure her records from Dollar Bank. On July 26, 1995, Croom filed a motion for an order directing Dollar Bank to provide any records relative to Christine Mackey's account which then Cleveland Municipal Court Judge Smith granted and issued the order the same day. Less than a month later, Croom filed a motion to show cause because the bank had not provided the requested information. The judge then ordered counsel for Dollar Bank to appear at a hearing on September 8, 1995 and show cause why he should not be held in contempt for failing to provide the records and, after that hearing, found the lawyer in contempt.
Dollar Bank asked for relief from this order because it did not want to expend substantial time and resources without assurances from Croom's counsel that it would be reimbursed for its expenses. Attached to this motion was the affidavit of the bank's records custodian, Michelle Thomas, who averred that, based upon the rates set forth in the Right to Financial Privacy Act of 1978,12 U.S.C. § 3415, the expense of obtaining these records would be in excess of $1,500. Dollar Bank cited R.C. 9.02, which provides that any party requesting a financial institution to assemble or provide customer records must pay the financial institution for the costs of compiling the information. Croom responded that the bank is subject to the order of the court. The magistrate's decision recommended an order to the bank to compile the records and submit an itemized bill to the court. The judge affirmed that decision and held that, under R.C. 9.02, the bank, a non-party, was entitled to payment of its expenses upon submission of an invoice itemizing the costs of reproducing the records.
The bank records were hand-delivered on January 22, 1996. On January 30, 1996, Dollar Bank filed a motion "to show cause and for contempt" because it had not paid $1,287.25 for the records provided. Croom's response contended that Christine Mackey should pay the charges and, through a cross-motion, requested sanctions against Dollar Bank's lawyer.
The case was scheduled for trial on March 11, 1996 and, although the docket does not indicate whether a hearing was held and the record does not contain the magistrate's recommendation, in an order journalized on April 17, 1996 Judge Stokes approved and confirmed the decision of the magistrate in favor of Christine Mackey and adjudging costs against Croom. Earlier, however, Croom had filed a request for findings of fact and conclusions of law on April 12, 1996, and on April 23, 1996, he filed objections to the magistrate's decision.
The magistrate's findings of fact and conclusions of law were issued on June 27, 1996, and on July 22, 1996, the judge approved the magistrate's decision. This judgment entry: (1) denied the request to impose a constructive trust upon Christine Mackey; (2) ordered Blake, as the requesting party, to pay Dollar Bank for the requested documents; (3) held that the fee Dollar Bank requested was reasonable; (4) held in abeyance Dollar Bank's motion "to show cause and for contempt" as it was premature; and (5) found moot Croom's motion to show cause against Dollar Bank and Jeff Paxton. Croom appealed from this order on August 15, 1996, to which Dollar Bank responded he lacked a final appealable order because the court retained jurisdiction over Dollar Bank's motion for contempt.
While the appeal remained pending, the judge heard Dollar Bank's motion for contempt on September 3, 1996, determined she had had jurisdiction over the motion, found Croom's lawyer, Blake, in contempt, and fined him $200.00. In response to Croom's request, the judge issued her findings of facts and conclusions of law on December 16, 1996, through which she again stated that she had the power to order the bank to produce the records and that Blake was liable for the payment of the records. This decision was signed by both the magistrate and the judge. As we noted in Croom I, Croom did not appeal from that order.
On January 15, 1998, this court rendered its decision in CroomI, affirming the judgment. On June 3, 1998, the Ohio Supreme Court declined to hear the case and dismissed Croom's appeal from our judgment.
On February 17, 1999, the magistrate issued the following decision:
 Attorney William Blake having filed [sic, failed] to attend two (2) hearings to inquire into whether certain orders of Court had been followed, citation to issue. Bailiff to serve. Appearance of said citation to be set for March 3, 1999 at 10:30 a.m. in Courtroom 14B.
A citation issued and was returned. Nothing upon the docket or in the record reveals the dates of the two hearings for which Blake allegedly did not appear.
Following the March 3rd hearing, the magistrate issued a decision dated March 11, 1999, which does not appear on the docket. Blake filed objections to that decision and contended that he had no hearing and the costs for reproduction costs did not comply with Ohio administrative rules; that the bank's lawyer misrepresented the law about reproduction costs to the court; that the magistrate wrongfully disallowed his requests for damages; and that he had been previously found in contempt of a non-existent order. He also requested a hearing to permit evidence of the costs sustained by both he and his client due to the bank's refusal to comply with certain but unspecified orders. Blake filed supplemental objections on March 26, 1999, contesting the method of calculating reproduction costs.
On April 12, 1999, the judge issued the following order:
 Magistrate's Decision is approved and confirmed. Dollar Bank to be paid its billed costs thirty (30) days from hearing date of March 3, 1999. If payment has been made, the $200 imposed for contempt is suspended. If payment to the bank is not made, then Counsel Blake is to be remanded to custody.
The following day, Blake filed this appeal.
Blake asserts four assignments of error. We address his first, second, and fourth assignments of error together.
 I. THE COURT ERRED IN FAILING TO RECOGNIZE THAT A FEDERALLY CHARTERED SAVINGS AND LOAN DOING BUSINESS IN OHIO IS SUBJECT TO O.R.C. SECTION 1155.20, AND OAC 1301:2-109 AND 12 C.F.R. PART 545 (SEE FEDERAL REGISTER VOL. 55, NO. 165, PG. 34698).
 II. THE COURT ERRED IN HOLDING THAT A MUNICIPAL COURT MAY IGNORE THE PROVISIONS OF OHIO LAW CONTROLLING CHARGES FOR REPRODUCTION OF DOCUMENTS ESTABLISHED BY OHIO SUPERINTENDENT OF BANKS.
 IV. THE COURT ERRED IN FAILING TO AWARD APPELLANT ATTORNEY FEES AND EXPENSE MONEY FOR OPPOSING DOLLAR BANK'S SPURIOUS MOTION.
Blake essentially argues that, since 1990, federally chartered savings and loans are subject to Ohio regulation, not federal regulation, and that the Right to Financial Privacy Act of 1978, which the bank's records custodian cites to in her affidavit, does not support the costs charged. He claims that the judge clearly erred in permitting a $2.00 per document charge when Ohio law allows no more than a $.15 per page fee. Finally, he argues, the bank should have turned over the copied documents when initially ordered to do so and its failure to comply with that order required him to expend attorney fees and out-of-pocket expenses totaling $6,247.80. Therefore, he concludes, the judge erred in failing to award him damages for filing its spurious motion.
The judge journalized the final order relating to these assignments of error on July 22, 1996. We addressed or could have addressed the issues and arguments presented in these present assignments of error in Croom I. In Croom I we concluded, in pertinent part, that (1) the judge did not abuse her discretion in awarding reproduction costs and that (2) the bank's motion for reproduction costs was not spurious and damages should not be awarded simply because Croom's lawyer had to respond to this motion. The arguments advanced now present nothing more than an ever-so slight twist on an old story.
The doctrine of the law of the case provides that a decision of a reviewing court remains the law for that case as to all relevant legal questions in subsequent proceedings both at trial and appellate levels unless that rule of practice achieves an unjust result. N. Olmsted v. Eliza Jennings, Inc. (1993),91 Ohio App.3d 173, 183, 631 N.E.2d 1130, citing Weir v. Kebe (1985),29 Ohio App.3d 53, 503 N.E.2d 177; see Nolan v. Nolan (1984),11 Ohio St.3d 1, 3-4, 462 N.E.2d 410. The doctrine applies upon remand from an appellate court, when the trial judge is confronted with substantially the same facts and issues that were involved in the prior appeal. Eliza Jennings, Inc., 91 Ohio App.3d at 183, citingHawley v. Ritley (1988), 35 Ohio St.3d 157, 160, 519 N.E.2d 390.
This court, like the trial judge, is bound by our previous decision and we will not reconsider the exact same facts, issues, and assignments of error upon appeal from a subsequent order in the same underlying suit. Such reconsideration is neither timely nor procedurally correct. See App.R. 26(A). Therefore, Blake's first, second, and fourth assignments of error are dismissed.
In his third assignment of error, Blake asserts:
 III. THE COURT ERRED IN HOLDING THAT AN ATTORNEY MAY BE FOUND IN CONTEMPT OF COURT FOR VIOLATION OF A NON[-]EXISTENT ORDER.
Blake here denies any order requiring him to pay the costs exists and, therefore, concludes he cannot be found in contempt. In addition, he claims that the judge should not have found him in contempt because the bank's lawyer refused his check for $333.60, which, he alleges, would reflect the lawful amount permitted under Ohio Admin. Code 1301:2-1-09.[1]
The record contains the July 22, 1996 judgment entry imposing a duty directly upon Blake to pay the invoiced sum to Dollar Bank, which judgment was affirmed by this court in Croom I. We read this assignment of error to challenge the December 16, 1996 judgment entry finding him in contempt and requiring him to pay $200 to the court for his failure to pay reproduction costs when the challenge to such costs was pending here. While he did not appeal from the December order of contempt, we will not dismiss this appeal as untimely because we look to the April 12, 1999 order presently before us as the finding of contempt for violation of the July 22, 1996 order following exhaustion of all appeals therefrom.
Under R.C. 2705.02, Blake may be punished for contempt if he disobeys a lawful order, judgment or command of a court. After a hearing, his failure to pay Dollar Bank was found to be indirect civil contempt, and the sanction imposed sought to coerce him into future compliance with that order. Brown v. Executive 200, Inc.
(1980), 64 Ohio St.3d 250, 416 N.E.2d 610. Because Blake's assignment of error is premised only upon the absence of a lawful order for which he could be held in contempt thereof, it is without merit.
It is ordered that the appellee recover from appellant his costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Ohio Admin. Code 1301:1-2-09, promulgated by the superintendent of building and loan associations pursuant to R.C.9.02(c), establishes the rates and conditions for reimbursement of actual and necessary costs directly incurred by building and loan associations in assembling or providing customer financial records to any party.