JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Barmar Enterprises, L.L.C. ("Barmar"), appeals the trial court's decision to grant the motion for summary judgment filed by appellee, Benco Industries, Inc. ("Benco"). After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} Benco and Barmar had a business relationship. Barmar is a steel brokerage and financial services business. In 2004, Barmar delivered six shipments of steel to Benco. Benco planned to resell it to end users. Benco informed Barmar that, for various reasons, the six shipments were rejected by the end users because of product quality. Because of this, Benco issued itself six debit memos totaling $77,913.14, and eventually returned all of the alleged defective steel to Barmar.
 {¶ 3} On November 2, 2004, Benco's president, Douglas Hatlovic, prepared a reconciliation that listed five outstanding invoices Barmar had issued to Benco. The invoices totaled $108,806.10. The reconciliation also listed the six debit memos that Benco had issued itself for $77,913.14.
 {¶ 4} The reconciliation stated: "Enclosed please find our reconciliation of your account. In a show of good faith we have drafted a check in the amount of $30,892.96 representing full and final payment to Barmar thus clearing our account to a zero (0) balance. Upon your acceptance, Benco will release your 44,860 lbs of steel ***. Please sign and fax back your acceptance of this accord and satisfaction in order to conclude this matter immediately." *Page 4 
 {¶ 5} After receiving the reconciliation, Barmar president, Barry Rosenthal, signed the document, and Benco issued Barmar a check for $30,892.96.
 {¶ 6} On April 26, 2007, Barmar filed suit in common pleas court seeking damages for the six debits Benco had listed on the reconciliation. Barmar contended that it had lost money when it resold the rejected steel to a third party at a reduced cost.
 {¶ 7} On January 1, 2008, Benco filed a motion for summary judgment. On February 14, 2008, Barmar filed a brief in opposition to the motion for summary judgment. On May 15, 2008, the trial court granted Benco's motion. On June 11, 2008, Barmar filed a timely notice of appeal.
 Review and Analysis {¶ 8} Barmar brings this appeal, asserting one assignment of error for our review.
 {¶ 9} "I. The trial court erred in granting summary judgment in favor of Defendant-Appellee Benco Industries, Inc., as genuine issues of material fact remain in the dispute."
 {¶ 10} Barmar argues that the trial court erred when it granted Benco's motion for summary judgment based upon an alleged accord and satisfaction. Specifically, Barmar alleges that it presented sufficient evidence of undue influence and fraud to overcome summary judgment. This argument is without merit.
 {¶ 11} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact *Page 5 
remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 12} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed.2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 13} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. (1991),59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact or material elementof the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ. R. 56(C) showing a genuine issue for trial exists. Id. *Page 6 
 {¶ 14} This court reviews the lower court's granting of summary judgment de novo. Brown v. County Commrs. (1993), 87 Ohio App.3d 704,622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record *** in a light most favorable to the nonmoving party ***. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 15} The trial court granted Benco's motion for summary judgment, which had been based on the defense of accord and satisfaction. "An accord and satisfaction is a method of discharging a contract by substituting another contract or agreement, the execution of which satisfies the original duty. Four elements must be present to have an accord and satisfaction: proper subject matter, competent parties, mutual assent, and consideration." Warner Storage, Inc. v. Systemation,Inc. (1989), 64 Ohio App.3d 1, 4, 580 N.E.2d 490, citing State ex rel.Shady Acres Nursing Home, Inc. v. Rhodes (1983), 7 Ohio St.3d 7, 8,455 N.E.2d 489.
 {¶ 16} "As an accord and satisfaction is the result of an agreement between the parties, it cannot be consummated unless the creditor accepts the lesser amount with the intention that it constitutes a settlement of the claim." State ex rel. Shady Acres Nursing Home, Inc.v. Rhodes, supra, citing Warner Elevator Mfg. Co. v. Higbee (1935), 53 Ohio App. 546, 5 N.E.2d 947. *Page 7 
 {¶ 17} Based on the reasoning below, we find that the parties signed a valid accord and satisfaction and that the trial court properly granted summary judgment because there are no genuine issues of material fact.
 Subject Matter, Competent Parties, Consideration {¶ 18} Three elements of accord and satisfaction are clearly met. Here, a contract dispute between two businesses is proper subject matter; both parties are businesses, and thus competent; and, clearly, there was consideration in the amount of $30,892.96.
 Mutual Assent {¶ 19} The only element disputed by Barmar is mutual assent. Barmar alleges that there was no "meeting of the minds regarding the debited accounts for rejected steel shipments." In support of this argument, Barmar claims Benco subjected its president, Mr. Rosenthal, to undue influence in order to get him to sign the alleged accord and satisfaction and that Mr. Rosenthal only signed the document because Benco defrauded him. We shall address Barmar's claims of undue influence and fraud in turn.
 Undue Influence {¶ 20} Barmar argues that the reconciliation is unenforceable because of undue influence. "To constitute undue influence within the meaning of the law, there must be mental constraint, moral coercion, the substitution of external for internal agency." Ballentine's Law Dictionary (3 Ed. 1969). *Page 8 
 {¶ 21} Mr. Rosenthal testified in his deposition that "Benco Industries advised me if I did not sign that, I would get no money and I would have to sue them for the full amount. *** I was threatened with nonpayment." Barmar alleges that this testimony raises genuine issues of material fact as to the use of undue influence to "exert control" over Barmar to accept the terms of the reconciliation.
 {¶ 22} Threatening nonpayment or a lawsuit does not constitute undue influence. An accord and satisfaction, by its very definition, is an agreement to settle upon a smaller amount owed rather than risk nonpayment, which would necessitate a lawsuit. Accordingly, we find that Barmar has not demonstrated sufficient evidence of undue influence to overcome Benco's motion for summary judgment.
 Fraud {¶ 23} Barmar also argues that the reconciliation is unenforceable because of fraud. According to Barmar, the debits were fraudulent because, after obtaining independent testing on the steel, Barmar learned that Benco might have altered it in some way to make it unsuitable for the potential end users. As such, Barmar believes that this fraud defeats the defense of accord and satisfaction and "further demonstrates no mutual assent." In sum, Barmar argues that "the trial court wrongly granted summary judgment despite Barmar's evidence of fraud on the record that went unrefuted by Benco."
 {¶ 24} We find that Barmar has not demonstrated sufficient evidence of fraud to overcome Benco's motion for summary judgment. Everything that Barmar now *Page 9 
alleges demonstrates fraud was known to Barmar and its president, Mr. Rosenthal, before he signed the reconciliation. In his deposition, Mr. Rosenthal stated that it was correct that "all the things that you're claiming to be false premises were known to you prior to the time of signing [the reconciliation]." Mr. Rosenthal also testified that it was correct that "you could have chosen not to sign [the reconciliation] and contest the accord and satisfaction."
 {¶ 25} We also agree with Benco that Mr. Rosenthal's affidavit, stating that an independent testing laboratory found that the steel had been tampered with by Benco, is inadmissible hearsay. Affidavits in support of summary judgment must be made on personal knowledge. SeeState ex rel. Cassels v. Dayton City School Dist. Bd. of Edu.,69 Ohio St.3d 217, 1994-Ohio-92, 631 N.E.2d 150. Mr. Rosenthal did not have personal knowledge of the lab results. In fact, he testified that he never saw the actual steel in question, never did any personal testing, and did not take photographs of the steel. Therefore, Mr. Rosenthal's affidavit, insofar as it pertained to fraud and the quality of the steel, was inadmissible to prove fraud and overcome Benco's motion for summary judgment.
 {¶ 26} Barmar takes issue with the affidavit of Benco president, Mr. Hatlovic, alleging that it contained hearsay. Barmar alleges that "given that the Hatlovic affidavit is Benco's only form of affirmative evidence presented in its motion, this Court should find such evidence insufficient under Civil Rule 56(C)." Barmar believes that Mr. Hatlovic's statements in the affidavit regarding the quality of steel it returned are hearsay because they were not made from personal knowledge. *Page 10 
 {¶ 27} Again, all affidavits in support of summary judgment must be made on personal knowledge. State ex rel. Cassels, supra. However, Barmar is wrong in its assertion that the affidavit is the only evidence presented. Even if the affidavit was inadmissible because it contained hearsay, Benco has also presented a copy of the reconciliation, which includes all of the necessary terms of an accord and satisfaction, including the statement that "[u]pon your acceptance, Benco will release your 44,860 lbs of steel for your pickup on DM B761." Further, the reconciliation stated that it was an "accord and satisfaction."
 {¶ 28} In conclusion, we find that Benco carried its burden of production when it produced the accord and satisfaction, which is, in itself, sufficient to support summary judgment. The information provided by Mr. Hatlovic's affidavit was not needed to support the motion; therefore, whether it contained hearsay is irrelevant. While Barmar believes that it overcame Benco's evidence by asserting fraud and undue influence, we find that Barmar has not presented sufficient evidence of fraud or undue influence sufficient to overcome summary judgment. Accordingly, Barmar's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and JAMES D. SWEENEY, J.*, CONCUR
* SITTING BY ASSIGNMENT: JUDGE JAMES D. SWEENEY, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS. *Page 1